POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO DELGADO JR., Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| v. | **COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS** |
| ALLBIRDS, INC., JOSEPH ZWILLINGER, TIMOTHY BROWN, MICHAEL BUFANO, NEIL BLUMENTHAL, DICK BOYCE, MANDY FIELDS, NANCY GREEN, DAN LEVITAN, and EMILY WEISS, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff Gilberto Delgado Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, by and through Plaintiff's attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia*, the investigation by Plaintiff's counsel, which includes without limitation: (a) review and analysis of regulatory filings made by Allbirds, Inc. ("Allbirds" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued and disseminated by Allbirds; and (c) review of other publicly available information concerning Allbirds.

## NATURE OF THE ACTION

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired: (a) Allbirds Class A common stock pursuant and/or traceable to the registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's November 2021 initial public offering ("IPO" or the "Offering"); and/or (b) Allbirds securities between November 4, 2021 and March 9, 2023, inclusive (the "Class Period"). Plaintiff pursues claims against Defendants under the Securities Act of 1933 ("Securities Act") and the Securities Exchange Act of 1934 ("Exchange Act").

2.      Allbirds is a footwear and apparel company. Footwear represents the majority of the Company's revenue and brand. Its core products include lifestyle and performance shoes, such as the Dasher and the Runner.

3.      On November 4, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement. In the IPO, the Company sold approximately 16,850,799 shares of Class A common stock at a price of $15.00 per share. The

Company received proceeds of approximately $237 million from the Offering, net of underwriting discounts and commissions.  The Company stated that it intended to use the net proceeds from the Offering for "general corporate purposes, including working capital, operating expenses and capital expenditures."

4.      In the Registration Statement and throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (i) that Allbirds was overemphasizing products that extended beyond the Company's core offerings; (ii) that the Company's non-core products had a narrower appeal and were not resonating with customers as well as the Company's core products; (iii) that Allbirds was underinvesting in its core consumers' favorite products to push the Company's newer products with narrower appeal; (iv) that underinvesting in Allbirds' core products was negatively impacting the Company's sales; and (v) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

5.      On March 9, 2023, after the market closed, the Company issued a press release announcing a fourth quarter 2022 net loss of $24.9 million and a full year 2022 net loss of $101.4 million.  The Company also announced a full year 2022 adjusted EBITDA loss of $60.4 million, which was higher than the guidance target that estimated an adjusted EBITDA loss of $42.5 million to $37.5 million.  Allbirds also disclosed in the press release that, in response to these negative results, it created a "strategic transformation plan to reignite growth, improve costs and capital efficiency, and drive profitability."  The plan purportedly focused on four areas: reigniting product

and brand, optimizing U.S. stores and slowing the pace of openings, evaluating transition of international go-to-market strategy, and improving cost savings and capital efficiency.

6.      Also on March 9, 2023, after the market closed, Allbirds announced that its Chief Financial Officer ("CFO"), Michael Bufano ("Bufano"), was stepping down.

7.      That same day the Company held a conference call with analysts to discuss its fourth quarter 2022 results.   On the call, Defendant Joseph Zwillinger ("Zwillinger"), the Company's Co-Chief Executive Officer ("CEO"), explained that Allbirds' poor results were driven in part by the fact that Allbirds "overemphasized products that extended beyond our core DNA."  As a result, he explained. "some products and colors have had narrower appeal than expected" and "[b]ecause we were spending significant time and resources on these new products that did not resonate well, we underinvested in our core consumers' favorite products."

8.      On this news, the Company's stock price fell $1.11, or 47%, to close at $1.25 per share on March 10, 2023, thereby injuring investors.

9.      By the commencement of this action, the Company's stock price had closed as low as $1.06 per share, a 92.9% decline from the Company's $15.00 per share IPO price.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

13.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's principal executive offices are in this District.

14.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

15.     Plaintiff, as set forth in the accompanying Certification, incorporated by reference herein, purchased or otherwise acquired Allbirds common stock pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO and/or Allbirds securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

16.     Defendant Allbirds is incorporated under the laws of Delaware with its principal executive offices located in San Francisco, California.  Allbirds' shares trade on the NASDAQ stock market under the symbol "BIRD."

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

17.     Defendant Zwillinger was, at all relevant times, a Co-CEO and a Director of the Company.  Zwillinger signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.     Defendant Timothy Brown ("Brown") was, at all relevant times, a Co-CEO of the Company.  Brown signed or authorized the signing of the Company's Registration Statement filed with the SEC.

19.     Defendant Bufano was, at all relevant times, the CFO of the Company.  Bufano signed or authorized the signing of the Company's Registration Statement filed with the SEC.

20.     Defendants Zwillinger, Brown, and Bufano (collectively, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

21.     Defendant Neil Blumenthal ("Blumenthal") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

22.     Defendant Dick Boyce ("Boyce") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

23.     Defendant Mandy Fields ("Fields") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

24.     Defendant Nancy Green ("Green") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

25.     Defendant Dan Levitan ("Levitan") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

26.     Defendant Emily Weiss ("Weiss") was a Director of the Company and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

27.     The Individual Defendants and Defendants Blumenthal, Boyce, Fields, Green, Levitan, and Weiss are collectively referred to hereinafter as the "Securities Act Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

28.     Allbirds is a footwear and apparel company.  Footwear represents the majority of the Company's revenue and brand.  Its core products include lifestyle and performance shoes, such as the Dasher and the Runner.

29.     On August 31, 2021, the Company filed its Registration Statement on Form S-1 with the SEC, which forms part of the Registration Statement.  The Company subsequently made several amendments to the Form S-1.

30.     On October 25, 2021, the Company filed its final amendment to the Registration Statement with the SEC on Form S-1/A, which forms part of the Registration Statement.  The Registration Statement was declared effective on November 2, 2021.

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

31.    On November 4, 2021, the Company filed its prospectus on Form 424B4 with the SEC, which forms part of the Registration Statement.   In the IPO, the Company sold approximately 16,850,799 shares of Class A common stock at a price of $15.00 per share.   The Company received proceeds of approximately $237 million from the Offering, net of underwriting discounts and commissions.   The Company stated that it intended to use the net proceeds from the Offering for "general corporate purposes, including working capital, operating expenses and capital expenditures."

### <u>Materially False and Misleading Statements Issued in the<br>Registration Statement and Prospectus</u>

32.    The Registration Statement was negligently prepared and, as a result, contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading, and was not prepared in accordance with the rules and regulations governing its preparation.

33.    Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

34.    The Registration Statement[1] highlighted why the Company had been successful prior to the IPO.  Among the reasons for its success, the Company listed a "deep connection with our community of customers":

> By making great products and telling the story of an inspirational, purpose-driven brand, ***we have formed a deep connection with our community of customers***. We have sold our products to over four million customers since our founding. As of June 30, 2021, we had more than two million people on our email list and nearly one million followers on social media. Our high Net Promoter Score, which has consistently been 83 or higher since the first quarter of 2019 and was 86 for the first half of 2021, demonstrates our strong following and growing brand advocates who

---

[1]    Unless otherwise stated, all emphasis in bold and italics hereinafter is added.

love Allbirds. ***Approximately 53% of our net sales in 2020 came from repeat customers.*** This is true globally, as our customers span 35 countries, and 24% of our net revenue in 2020 came from outside the United States. See the section titled "Market, Industry, and Other Data" for additional information regarding Net Promoter Score.

As a brand with a digitally-led vertical retail distribution strategy, we are able to own the customer experience, which allows us to use data to determine who our customers are, what is important to them, and what products are most relevant and when, allowing us to create a strong connection with our customers. We have learned that our customers live an active and curious lifestyle, care about health and well-being, prioritize quality over price, frequently purchase products online, live in urban center settings, and appreciate socially conscious brands. In addition to communicating more effectively with our customers, these insights allow us to meet customers' needs through the creation of new products and enhancements to our existing line.

Further, to illustrate the importance of engaging our customer base, the average spend by a repeat customer in a given cohort is over 25% more in their second year as compared to what was spent in the first year, and the average spend by a repeat customer continues to increase each subsequent year.

35.    The Registration Statement also discussed five strategies that will maintain the Company's success.  The strategies failed to state that the Company was shifting its focus toward new customers at the expense of its core customers.

36.    The Registration Statement strategies also included deepening engagement with the Company's community of customers, which also failed to state the shift in focus.  The strategy stated, in relevant part:

> ***By deepening our relationships with our repeat customers, we believe we are well-positioned to capture a greater share of the approximately seven pairs of shoes and 68 pieces of clothing that the average American bought in 2018 and realize substantial growth in our business.*** We believe there is continued opportunity to grow our closet share as we further expand our brand and product selection, as evidenced by the fact that approximately 80% of orders from repeat customers in the six-month period ended June 30, 2021 included a different item than in their first order and 26% of those orders were for multiple items.

37.    In the Registration Statement and throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to

8

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

disclose to investors: (i) that Allbirds was overemphasizing products that extended beyond the Company's core offerings; (ii) that the Company's non-core products had a narrower appeal and were not resonating with customers as well as the Company's core products; (iii) that Allbirds was underinvesting in its core consumers' favorite products to push the Company's newer products with narrower appeal; (iv) that underinvesting in Allbirds' core products was negatively impacting the Company's sales; and (v) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**<u>Materially False and Misleading Statements Issued During the Class Period</u>**

38.     The Class Period begins on November 4, 2021.  On that day, Allbirds' common stock began publicly trading pursuant to the Registration Statement, including the statements identified in ¶¶ 34-36.

39.     On November 30, 2021, the Company issued a press release announcing its third quarter 2021 financial results.  Defendant Zwillinger also stated the following about the Company's performance but did not disclose that the strategic plan was at the expense of core customers:

> "We are pleased to deliver strong third quarter performance, which reflects solid execution by our teams and robust global demand for the Allbirds brand," said Joey Zwillinger, Co-Founder and Co-CEO. "Revenue was strong across channels and geographies, growing 33% year over year, with notable strength in U.S. physical retail. Importantly, we saw strong consumer response in the quarter to our new product innovation, including our new Perform Apparel line."

> "We're at the forefront of a generational change in consumer values and purchase behaviors, led by our mission to make better things in a better way—which means we're aligning our purpose of reversing climate change with our product quality and financial outcomes. Looking ahead, we believe Allbirds is uniquely positioned in an exceptionally large and growing market. ***As we continue to execute our strategic plan, we are focused on accelerating growth, creating value for our shareholders and building for a multi-decade journey.***"

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

40.    On May 10, 2022, the Company issued a press release announcing its first quarter 2022 financial results.  The press release announced a reduction to its financial targets but failed to state that the Company had shifted its focus toward attracting new customers at the expense of its core customers.  Defendant Zwillinger was quoted saying the following about the Company's performance:

> "We are pleased to deliver strong first quarter performance across our key financial metrics, particularly against the backdrop of a volatile operating environment," said Joey Zwillinger, co-Founder and Co-CEO. "Tumult around the world since our last earnings report, including Russia's invasion of Ukraine and China's COVID-19 restrictions, impacted the performance of our international business in Q1 and is expected to persist for the remainder of 2022. These factors were more than offset by excellent performance in our U.S. business, which delivered net revenue growth of 35% in the first quarter. Net revenue growth for the total business again accelerated on both a one- and two-year basis in the quarter, up 26% and 49%, respectively."

> "We believe our teams are continuing to execute well amidst the external headwinds and we remain focused on driving the topline through our core growth pillars of delivering product innovation, growing our store portfolio and expanding internationally, with those growth pillars highlighted in 2022 by what we believe is the most exciting new product roadmap in the history of the company. While we are adopting a more conservative near-term outlook in light of the transitory external headwinds affecting our international business, we expect to deliver strong full year revenue growth of 21% to 24% in 2022. Importantly, we remain confident that our digital-savvy, omni-channel operating model will support continued growth and enable us to create meaningful value for our shareholders in the years ahead."

41.    On August 8, 2022, the Company issued a press release reporting its second quarter 2022 financial results.  The press release announced a reduction in guidance targets but failed to state that the Company had shifted its focus away from core customers.  Defendant Bufano was quoted saying the following but did not disclose that the Company's focus was at the expense of core customers:

> In this operating environment, we are focused on controlling what we can control and have implemented a series of Simplification Initiatives focused on automating and expanding our supply chain and streamlining our operating structure. These Simplification Initiatives are expected to generate annualized SG&A expense savings of $13 million to $15 million beginning in 2023 and significant cost of

revenue savings in future years. We will reinvest some of these savings into building brand momentum through product innovation, marketing, retail stores, and marquee third party partnerships. ***We are confident that these investments in the customer, coupled with our Simplification Initiatives, will help us navigate this consumer slowdown and position us for accelerated profitable growth*** when the headwinds pass.

42.    On November 8, 2022, the Company issued a press release announcing third quarter 2022 financial results.  The Company announced that it was maintaining full year guidance targets but failed to state that it had shifted focus toward attracting new customers at the expense of its core customers.  Defendant Zwillinger was quoted saying the following about the Company's performance, but he failed to state that the Company had shifted its focus toward attracting new customers:

> "We delivered a strong quarter in what remains a highly dynamic operating environment. I am proud that we exceeded our Q3 adjusted revenue and adjusted EBITDA guidance targets while also delivering on our sustainability goals," said Joey Zwillinger, Co-Founder and Co-CEO. "Looking ahead to year end and 2023, we continue to expect macro headwinds to persist but believe that our brand, our growth strategy, and simplification initiatives position us well to emerge strongly from this period. Thanks to the team's hard work I remain confident in our ability to continue to execute into the holiday season and next year."

> "November also marks the one year anniversary of our IPO, a critical step in building Allbirds into a 100 year brand while setting a new industry standard for sustainable business for others to follow. We recently released our "Flight Status" sustainability report for 2021, which shows that we were able to reduce our average product carbon footprint by 12% while growing our net revenues by 27% in 2021. We remain on track to deliver on our goal to cut our already low per product carbon footprint in half by 2025 and achieve near zero by 2030, while also delivering on our Sustainability Principles & Objectives Framework commitments first enumerated in our S-1. I could not be more proud of what we have achieved and remain tremendously optimistic about the future."

43.    The above statements identified in ¶¶ 38-42 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (i) that Allbirds was overemphasizing products that extended beyond the Company's core offerings; (ii)

that the Company's non-core products had a narrower appeal and were not resonating with customers as well as the Company's core products; (iii) that Allbirds was underinvesting in its core consumers' favorite products to push the Company's newer products with narrower appeal; (iv) that underinvesting in Allbirds' core products was negatively impacting the Company's sales; and (v) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### The Truth Emerges

44.     On March 9, 2023, after the market closed, Allbirds issued a press release announcing that Defendant Bufano was stepping down as the Company's CFO and that Annie Mitchell was taking his place, effective April 24, 2023.

45.     Also on March 9, 2023, after the market closed, Allbirds issued a press release reporting Fourth Quarter and Full Year 2022 financial results (the "4Q22 Press Release"), which revealed, among other things, a full year 2022 net loss of $101.4 million.  It contained the following financial highlights:

- Fourth quarter 2022 net revenue, which included $1.5 million of revenue primarily associated with the previously announced discontinuation of certain first generation apparel, decreased 13% to $84.2 million compared to fourth quarter 2021 and increased 6% compared to fourth quarter 2020.

* * *

- **Full year 2022 net loss of $101.4 million**, or $.68 per basic and diluted share.

- **Fourth quarter 2022 net loss of $24.9 million**, or $0.17 per basic and diluted share.

- **Full year 2022 adjusted EBITDA loss of $60.4 million.**

- ***Fourth quarter 2022 adjusted EBITDA loss of $12.5 million***, including a $3.5 million loss primarily associated with the previously announced discontinuation of certain first-generation apparel.

(Footnotes omitted.)

46.    In response to the disappointing results, the 4Q22 Press Release also announced a "strategic transformation to drive sustained and profitable growth."  The plan focuses on these areas:

- Reignite product and brand

  o Executing a highly-focused brand strategy that reconnects with core consumers.

- Optimize U.S. stores and slow pace of openings.

  o Driving traffic and conversion to our U.S. fleet and selectively expanding our third party wholesale channel.

- Evaluate transition of international go-to-market strategy

  o Evaluating potential distributor partners in certain international markets to grow internationally in a cost- and capital-efficient manner

- Improve cost savings and capital efficiency

  o Building upon and further accelerating 2022 cost and cash optimization initiatives to accelerate cost of revenue savings and SG&A savings, and improve cash optimization.

47.    Also on March 9, 2023, after the market closed, the Company held an earnings call conference.  Defendant Zwillinger explained how the Company had fallen short and what decisions led to the poor financial results.  Defendant Zwillinger stated:

However, in this journey we also made some missteps. ***First, we overemphasized products that extended beyond our core DNA***. And as a result, some products and colors have had narrower appeal than expected. ***Because we were spending significant time and resources on these new products that did not resonate well, we underinvested in our core consumers' favorite products***. Finally, we did not increase our brand awareness to the level that we anticipated.

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

***In essence, over the past couple of years, we shifted our focus away from our core consumer and we must refocus sharply on this large and attract [sic] group.*** Taking a look at Q4 specifically this dynamic was exacerbated by the fact that the final weeks of December were exceptionally promotional and we did not sufficiently promote to meet consumers' expectations. As a result, Q4 was the first quarter of negative growth in our history. We are disappointed with these results. And we know that, as we look ahead the status quo is not enough.

48.     On this news, the Company's stock price fell $1.11, or 47%, to close at $1.25 per share on March 10, 2023, thereby injuring investors.

49.     By the commencement of this action, the Company's stock price had closed as low as $1.06 per share, a 92.9% decline from the Company's $15.00 per share IPO price.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Allbirds: (a) Class A common stock pursuant and/or traceable to the Company's false and/or misleading Registration Statement issued in connection with the Company's IPO; and/or (b) securities between November 4, 2021 and March 9, 2023, inclusive; and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

51.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  In the IPO, the Company sold approximately 16,850,799 shares of Class A common stock at a price of $15.00 per share. Moreover, record owners and other members of the Class may be identified from records

maintained by Allbirds or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

52.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

53.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

54.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether the Registration Statement, statements made by Defendants to the investing public in connection with the Company's IPO, and statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Allbirds; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

55.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action

56.    The market for Allbirds' securities was open, well-developed, and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Allbirds' securities traded at artificially inflated prices during the Class Period.  On November 18, 2021, the Company's share price closed at a Class Period high of $26.76 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Allbirds' securities and market information relating to Allbirds, and have been damaged thereby.

57.    During the Class Period, the artificial inflation of Allbirds' shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Allbirds' business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Allbirds and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

58.    At all relevant times, the market for Allbirds' securities was an efficient market for the following reasons, among others:

(a)    Allbirds shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Allbirds filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Allbirds regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Allbirds was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

59.    As a result of the foregoing, the market for Allbirds' securities promptly digested current information regarding Allbirds from all publicly available sources and reflected such information in Allbirds' share price.  Under these circumstances, all purchasers of Allbirds' securities during the Class Period suffered similar injury through their purchase of Allbirds' securities at artificially inflated prices and a presumption of reliance applies.

60.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to

recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## UNDISCLOSED ADVERSE FACTS

61.     The market for Allbirds' securities was open, well-developed, and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Allbirds' securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Allbirds' securities relying upon the integrity of the market price of the Company's securities and market information relating to Allbirds, and have been damaged thereby.

62.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Allbirds' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Allbirds' business, operations, and prospects as alleged herein.

63.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Allbirds' financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an

unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

64.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

65.     During the Class Period, Plaintiff and the Class purchased Allbirds' securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

66.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Allbirds, their control over, and/or receipt and/or modification of Allbirds' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential

proprietary information concerning Allbirds, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

67.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions.  In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Allbirds who knew that the statement was false when made.

## COUNT I

**(Violations of Section 11 of the Securities Act Against All Defendants)**

68.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

69.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Defendants.

70.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

71.     Allbirds is the registrant for the IPO.   The Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

72.     As issuer of the shares, Allbirds is strictly liable to Plaintiff and the Class for the misstatements and omissions.

73.     None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

74.     By reasons of the conduct herein alleged, each Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

75.     Plaintiff acquired Allbirds shares pursuant and/or traceable to the Registration Statement for the IPO.

76.     Plaintiff and the Class have sustained damages.  The value of Allbirds Class A common stock has declined substantially subsequent to and due to the Defendants' violations

## COUNT II

### (Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)

77.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

78.     This Count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

79.    The Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Allbirds within the meaning of Section 15 of the Securities Act.  The Individual Defendants had the power and influence and exercised the same to cause Allbirds to engage in the acts described herein.

80.    The Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

81.    By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

<u>COUNT III</u>

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against Allbirds and the Individual Defendants)**

82.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

83.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Allbirds' securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

84.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to

maintain artificially high market prices for Allbirds' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

85.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Allbirds' financial wellbeing and prospects, as specified herein.

86.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Allbirds' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Allbirds and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

87.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and

participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

88.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them.  Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Allbirds' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

89.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Allbirds' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of

the market in which the securities trade, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Allbirds' securities during the Class Period at artificially high prices and were damaged thereby.

90.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Allbirds was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Allbirds securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

91.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

92.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## **COUNT IV**

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

93.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

94.     The Individual Defendants acted as controlling persons of Allbirds within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the

Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

95.     In particular, the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

96.     As set forth above, Allbirds and the Individual Defendants each violated Section 10(b) of  the Exchange Act and Rule 10b-5 promulgated thereunder by their acts and omissions as alleged in this Complaint.  By virtue of their position as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for relief and judgment as follows:

A.     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS

B.     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.     Such other and further relief as the Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: May 16, 2023                     Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS